IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2017

## CLEVELAND FRAZIER v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Knox County
No. 106577     Bob R. McGee, Judge

### No. E2016-02441-CCA-R3-PC

The Petitioner, Cleveland Frazier, appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his 2015 guilty pleas to possession of less than 0.5 gram of cocaine in a school zone and possession of a firearm during the commission of a dangerous felony and his effective eleven-year sentence. The Petitioner contends that he received the ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, Cleveland Frazier.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Charme P. Allen, District Attorney General; and Hector Sanchez, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the Petitioner's April 20, 2015 guilty pleas pursuant to a negotiated agreement. The Petitioner's agreed-upon sentence was consecutive terms of eight years for the possession of cocaine in a school zone conviction and three years for the possession of a firearm during the commission of a dangerous felony conviction. The guilty plea transcript is not included in the record on appeal.

At the post-conviction hearing, the Petitioner testified that he pleaded guilty with an agreed sentence of eleven years at 100% service. He stated that the sentence consisted of

eight years for a drug charge and three years for a firearms charge. He asked the post-conviction court to vacate his guilty pleas and allow him to have a jury trial. He stated that he understood he would be subject to the original charges "[d]rug-free zone, trespassing and in possession of firearm," and that if he were convicted, he faced a sentence of fifteen to twenty-five years at 100% service. He said that counsel represented him for about six months, that he had three previous attorneys, and that he met with counsel three times, one of which was just before he entered his guilty pleas. The Petitioner stated that counsel did not ask him about the facts of the case. The Petitioner said he asked counsel whether he could be convicted, and counsel responded that if he took the case to trial, he would lose because a police officer's word alone was sufficient for a conviction. The Petitioner said that counsel told him about the plea offer and that the Petitioner wanted to talk to his family before accepting it.

Relative to the facts of the case, the Petitioner testified that he was at his girlfriend's house, that he and his sister were walking together to play basketball, that he saw a group of his friends and approached them, and that the police pulled up. The Petitioner said that he walked away from the group because he "knew that [he] was . . . trespassing." The Petitioner stated that a police officer exited his police cruiser because he knew that the Petitioner was trespassing, that the officer patted down the Petitioner but did not find anything, that the officer learned the Petitioner was trespassing, and that the officer arrested the Petitioner. The Petitioner said that the officer told another officer to "go search and see if he [could] find some guns" and that the officer found drugs and a gun.

The Petitioner testified that to his knowledge, counsel did not investigate the case. He said that counsel did not review discovery or police video recordings with him. The Petitioner stated that counsel attempted to play a recording on his computer when he visited the Petitioner the day before the Petitioner entered the guilty pleas but that the computer did not function. The Petitioner denied that counsel told him about potential fingerprint evidence and noted that one of his previous attorneys mentioned no fingerprints were found on the gun or the "drug bag." The Petitioner said that he told counsel what his previous attorney had said and that counsel did not investigate or obtain the Tennessee Bureau of Investigation (TBI) report relative to fingerprints. The Petitioner said that counsel did not talk with his sister, who witnessed the relevant events and could have testified on the Petitioner's behalf.

The Petitioner testified that counsel told him the plea offer was for eleven years at 100% service but that when the Petitioner went to the Tennessee Department of Correction (TDOC), "it was going to drop down . . . 15 percent" because he was not a violent offender. The Petitioner said he decided to plead guilty because counsel told him he would lose at trial. He stated that his decision was affected by the sentence reduction counsel described. The Petitioner remembered counsel's reviewing the guilty plea form with him and the

-2-

Petitioner's stating on the form that he thought counsel provided effective assistance. He said that he had changed his mind because although he was supposed to receive "85 percent good time" when he got to the TDOC, he could not receive good time credit because of the drug-free school zone enhancement. He noted that he was age eighteen when he was arrested and age twenty when he pleaded guilty.

The Petitioner testified that counsel explained the plea offer and his rights to him and that the Petitioner did not ask any questions. The Petitioner said that he knew he was giving up his trial rights. He stated that he first met with an investigator at the time of his guilty pleas. The Petitioner said that he declined an initial plea offer of thirteen years at 100% service because he did not want to accept any sentence requiring 100% service. He denied that the drugs and the gun belonged to him. He denied that counsel ever discussed filing a motion to suppress and said that it would have been important to test "the grounds of the drugs and the gun[.]" He said that he told counsel at their first meeting about his sister's presence during the arrest and that counsel did not say anything because he was focused on the plea agreement.

On cross-examination, the Petitioner testified that he knew he had been "trespassed from Western Heights," the area in which he was walking, that he was accompanied by his sister and Couron Bennett, and that an officer found two guns and a cigarette box containing crack cocaine "around the car" where he and other people had been. The Petitioner denied the items belonged to him. He denied knowing a trial date was scheduled or that he pleaded guilty the day before the trial was to begin. He denied that counsel showed him a video recording, although he acknowledged that he saw a copy of the TBI forensic analysis report of the drugs.

The Petitioner testified that he recalled the plea colloquy and the trial court's informing him that his sentence would be served at 100%. He stated that he did not ask the court any questions about the discrepancy relative to the release eligibility date because he trusted what counsel had told him. The Petitioner recalled the prosecutor's saying at the colloquy that the sentence was at 100% service. The Petitioner said, though, that counsel told him he would receive good time credit in the TDOC under "the guidelines" and that the Petitioner expected to serve seven years after subtracting the time he had already served.

The Petitioner read portions of the guilty plea transcript into the record. He stated that the plea agreement was for "possession with intent to sell less than half a gram of cocaine within 1,000 feet of an elementary school," a Class B felony, and "felon[] . . . in possession of a weapon," a Class C felony, with a total effective sentence of eleven years at 100% service.

Relative to a motion to suppress, the Petitioner testified that he did not know whether such a motion would have succeeded but that it would have helped him, had it been filed. The Petitioner said that he was in custody during the period in which counsel represented him.

Jamica Frazier, the Petitioner's sister, testified that on the date of the offenses, she and the Petitioner left a birthday party and walked toward a location to play basketball. She said that the Petitioner saw a crowd of people and stopped, that he and a friend had "been having problems," and that the friend had called the police and told them the Petitioner was trespassing. She said that she and the Petitioner crossed the street to talk to Ms. Frazier's aunt, that the police arrived and arrested the Petitioner, and that the police crossed the street to the crowd of people and claimed they had discovered two guns and "two packs of Newports." Ms. Frazier denied that the Petitioner had guns, drugs, or Newport cigarettes that day. She denied that he threw away anything as they walked.

Ms. Frazier testified that she met with one of the Petitioner's former attorneys, that he showed her two video recordings, and that the recordings only depicted the Petitioner's arrest, not his throwing away anything. She stated that she only spoke briefly to counsel when she came to the Petitioner's plea hearing. She said that she did not have further contact with counsel and that she never spoke with an investigator.

On cross-examination, Ms. Frazier testified that she was unhappy the Petitioner was incarcerated. When asked whether she was looking at things from the perspective of the Petitioner's best interest, Ms. Frazier said, "Not at all. Wrong is wrong. If he did wrong, he did wrong . . . . [I]'ll admit [that he] was . . . trespassing." She denied that she saw the Petitioner commit any other crimes. Ms. Frazier stated that she met counsel twice outside of court but that she did not remember the substance of their conversations. She agreed that she was not counsel's client and that he did not have a duty to discuss case strategy with her.

Relative to the date of the offenses, Ms. Frazier testified that as she and the Petitioner walked down the street, they passed a woman's house, that the woman allowed people to gather at her house, and that a crowd of people, including Mr. Bennett, was there. Ms. Frazier said that when the police officers stopped, they were near her side of the street. She said that she was told that two guns were recovered near where the Petitioner was stopped. She agreed that the Petitioner smoked Newport cigarettes and that crack cocaine was recovered inside a Newport cigarette box.

On redirect examination, Ms. Frazier testified that counsel mentioned the amount of time the Petitioner could serve if he were convicted at trial, although she did not remember the details of the conversation. She said that she was "pretty sure" counsel called her, and

she noted that her telephone number changed often. She denied going to counsel's office or counsel's visiting her.

Counsel testified that he had been practicing criminal law for thirteen years and that he had handled drug cases before the Petitioner's case. He said that he understood the ramifications of a drug-free school zone violation and that he routinely informed his clients that sentences for such violations required 100% service. Counsel stated that he represented the Petitioner in the present case and that he began plea negotiations with the prosecutor. Counsel agreed that a trial date was scheduled. He did not recall the prosecutor's initial offer of thirteen years at 100% service but recalled that they ultimately agreed on eleven years at 100% service.

Counsel testified that he visited the Petitioner and that he explained the evidence against the Petitioner and showed him police video recordings. Counsel said that one of the recordings depicted the Petitioner's ducking behind a car as the police cruiser approached him. Counsel said that he met with the Petitioner just before the trial date and explained that if the jury saw the recording, a "good chance" existed he would be convicted. Counsel stated that if the Petitioner testified he never saw the recording, it was inaccurate. Counsel said that he gave the Petitioner other discovery materials, although he did not remember their contents.

Counsel testified that generally, when deciding whether to file a motion to suppress, he considered whether a police officer had made a procedural error and had violated a defendant's rights. He said that in the Petitioner's case, the officers had a right to be there, that it was a "good stop," and that he would file a motion to suppress when it was merited. Counsel stated that he told the Petitioner "it was 100 percent service rate he had to do day-for-day. I told him that I didn't know, but he could check with the TDOC to see if there was a possibility he could get any good time credit." Counsel said that he told the Petitioner he would receive jail credit for the time he had already served, which was about two years, and that, as a result, his sentence would be reduced to about nine years.

On cross-examination, counsel testified that he recalled speaking with the Petitioner's previous attorney, although he did not remember how much information he gained from the conversation. Counsel said that the Petitioner told him about Ms. Frazier, that counsel called Ms. Frazier, and that Ms. Frazier did not see anything that day because she was not paying attention to the Petitioner. Counsel stated that Ms. Frazier was not very helpful to the Petitioner's case. He said that the video recording clearly showed the Petitioner's actions.

The video recording, which is not included in the appellate record, was played for the post-conviction court. Still photographs taken from the recording were shown to counsel. Counsel stated that the recording showed the Petitioner standing at the back of a car where the drugs and gun were later found. Counsel said that the Petitioner initially claimed he was

in the middle of the road when the police arrived, but the recording belied his claim. Counsel stated that if a police officer described the Petitioner's bending over and concealing his arms and waist behind a car trunk, those events would have occurred before the still photographs were taken or outside of the frame of the camera. Counsel said that he was concerned about the officer's potential testimony, even if the recording were not consistent with the testimony. Counsel stated that he explained to the Petitioner that the Petitioner's location on the recording was "a big concern" and that counsel realized the Petitioner was lying or mistaken about his location during the encounter.

Counsel testified that three days before the scheduled trial date, he, his investigator, and the Petitioner reviewed the video recordings and that they discussed the defense and the State's plea offer. Counsel said that he told the Petitioner if he proceeded to trial, he was "taking a gamble" and faced a fifteen- to twenty-year sentence at 100% service in addition to the weapons charge. Counsel stated that the Petitioner agreed to accept the plea offer. Counsel said that his investigation was complete, that he was prepared for a trial, and that the defense strategy would have been to discredit the police officer's assertion that the officer saw the Petitioner drop something.

Counsel testified that he could not see whether the Petitioner wore gloves in the video recording. He said that he did not verify whether the police collected fingerprints from the guns because generally, if a weapon had not been used in a crime, the weapon was secured instead of collected as evidence and that as a result, no fingerprints would be on the weapon other than officer's fingerprints. Counsel stated that he did not think it was strategically necessary because the absence of the Petitioner's fingerprints would not have helped the case, but the presence of the Petitioner's fingerprints would have been harmful to the case. When asked whether the presence of a third party's fingerprints would have been significant, counsel said that he did not think so, that the police did not collect fingerprints from the guns, and that it was possible to request fingerprint testing, although counsel did not do so in this case.

Counsel testified that he explained the facts of the case, the alternative courses of action, and the possible outcomes to the Petitioner. He said that he met with the Petitioner's family months before the trial date, that counsel requested the Petitioner's sister attend, and that she was the only person who did not attend. Relative to the State's plea offer, counsel said that he told the Petitioner that the prosecutor had offered "eight years on a B felony, school zone. It was . . . eight years at 100 percent. There was three years mandatory consecutive on the weapons charge, and that was at 100 percent, gave him 11 years." He stated that the Petitioner had already been incarcerated for one or two years and that this time would "either be towards his parole or towards the end of his sentence." He said that he told the Petitioner "that he could check with TDOC, if there [were] any good time programs or . . . credits . . . if he would qualify with these kind of charges, that it would be totally up to

TDOC, that I had no control over it." Counsel denied telling the Petitioner that he would receive a fifteen percent sentence reduction. Counsel said that he was aware that in cases in which a defendant was sentenced to more than the minimum sentence length, the minimum sentence was served at 100%, and the remainder was served at the defendant's respective sentencing range. Counsel noted that good time credit was available for the portion of a sentence that did not require 100% service.

Counsel testified that he did not consider filing a motion to suppress because the police officers were present on a "legitimate call," the drugs and guns were in plain view, and nothing could have been suppressed. Counsel stated that he saw the dispatch records in connection with the Petitioner's case and that they reflected that the officers responded to a call reporting that the Petitioner was armed and "hanging out around a blue Lincoln." The call described the Petitioner as carrying a pistol and wearing a gray shirt, blue jeans, and dreadlocks pulled back into a ponytail. Counsel recalled that an off-duty police officer may have placed the call.

On redirect examination, counsel testified that before becoming an attorney, he had been a police captain. He said that, based upon his experience as a police officer, retrieving fingerprint evidence from guns that had been handled by officers was useless. He stated that he compiled his notes into a billing summary, which reflected that the Petitioner was charged with a Class A felony and that he pleaded guilty to a Class B felony. Counsel stated that the billing summary reflected counsel's receiving the case paperwork, preparing a discovery motion, meeting with an investigator, reviewing the case, performing research, and meeting with the Petitioner. The summary reflected that the Petitioner and counsel discussed the case and that the Petitioner denied the allegations, claiming that other people were in the area where the drugs and guns were found. Two days later, counsel met with previous counsel and unsuccessfully discussed a plea agreement with the prosecutor. Counsel filed a motion to reduce bond, which was denied, met with the Petitioner's family apart from his sister, and met with the investigator. Counsel reviewed additional discovery and the police video recordings. Counsel discussed the case with the Petitioner by telephone. Before the trial date, the prosecutor made the plea offer. Counsel denied telling the Petitioner he would receive a 15% sentence reduction. Counsel said that the Petitioner understood he would have to serve 100% of his sentence "day for day" and was ineligible for early release. Relative to the video recording, counsel stated that the Petitioner and an officer approached one another, that a casual encounter occurred, and that the officer had reasonable suspicion that a crime was being committed and could detain the Petitioner.

On recross-examination, counsel testified that no grounds existed for a motion to dismiss and that the case had to proceed to trial or conclude with a plea agreement. He said that he told the Petitioner he was ready for a trial but that if the Petitioner were convicted, he faced a minimum of fifteen years at 100% for the drug charge and three years at 100% for

the weapons charge. Counsel stated that after he showed the Petitioner the police video recording and explained it to him, the Petitioner said, "I think I better take the plea."

The post-conviction court found that counsel "thoroughly" investigated the case and had multiple discussions with the Petitioner about his options. The court found that the proof at the trial would have shown the Petitioner stood in the same place the guns and drugs were found and that the State's evidence was "very strong[.]" The court found that counsel denied telling the Petitioner he could receive a 15% sentence reduction and that counsel told the Petitioner he would have to serve 100% of the sentence day for day, even noting it on the judgment form. The court found that the Petitioner's allegation did not outweigh counsel's testimony and that the court "cannot make the finding he wants the Court to make, and cannot make any finding that he was misled as to what the sentence was going to be." Relative to the motion to suppress, the court found that counsel had explained his reasoning for not filing a motion and that the "tactical decision was well made." The court noted that proving a Fourth Amendment violation would have required the Petitioner's establishing a possessory interest in the items seized, which would have proven the State's case. The court found that absent the plea agreement, the minimum sentence the Petitioner faced after a trial was eighteen years at 100% service and that the Petitioner had failed to prove prejudice. The court denied the petition, and this appeal followed.

## I.    Ineffective Assistance of Counsel

The Petitioner contends that he received the ineffective assistance of counsel, arguing that counsel failed to explain adequately the release eligibility to which he agreed and failed to investigate potential fingerprint evidence. The State responds that counsel's performance was not deficient. We agree with the State.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *State v. Henley*, 960 S.W.2d 572, 580 (Tenn. 1997). "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in

criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). One of counsel's duties in preparing for a trial is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### a. Release Eligibility Percentage

The Petitioner contends that counsel incorrectly advised him that although the plea agreement stated he would serve 100% of his service, once he arrived at the TDOC, he would be eligible for release after serving 85% of his sentence due to "good time" credit. He argues that but for this advice, he would not have accepted the plea agreement. The State responds that counsel's representation was not deficient.

Counsel testified at the post-conviction hearing that he never told the Petitioner he would receive good time credit. Rather, he said that he told the Petitioner the plea agreement was for 100% service but that the Petitioner could inquire with the TDOC about any possible sentence reduction available. Counsel wrote on the plea agreement form that the agreed sentence was for 100% service, and the Petitioner acknowledged that the prosecutor and the trial court stated at the guilty plea hearing that the agreed sentence was at 100% service. The post-conviction court credited counsel's testimony, and the record does not preponderate against its finding that the Petitioner understood the plea agreement required 100% service and that counsel's representation was not deficient. The Petitioner is not entitled to relief on this basis.

### b. Failure to Investigate

The Petitioner contends that counsel failed to investigate adequately the existence of fingerprint evidence on the guns and drugs. The State responds that counsel made a tactical decision not to pursue testing in case the results were harmful to the defense.

In the second amended post-conviction petition, the Petitioner raised an issue relative to counsel's alleged failure to file a motion to suppress the guns and drugs. However, the Petitioner raised an issue at the post-conviction hearing and contends on appeal that counsel should have investigated the existence of fingerprint evidence. Although the fingerprint issue was not raised in the post-conviction petition, it was discussed at some length during counsel's testimony, and post-conviction counsel included the issue in its argument. However, the post-conviction court did not make specific findings on this point, and post-conviction counsel did not request clarification. This court may not act in contravention of the finder of fact, and the issue is waived. T.R.A.P. 36(a). In any event, counsel testified that he made a tactical decision not to pursue fingerprint evidence because the results of fingerprint testing could have been damaging to the Petitioner's case. *See Adkins*, 911 S.W.2d at 347. We note that had counsel requested the analyses, the State could have been entitled to the results, provided the State requested reciprocal discovery. *See* Tenn. R. Crim. P. 16(b). The Petitioner is not entitled to relief on this basis.

The judgment of the post-conviction court is affirmed.

 

 

_____
ROBERT H. MONTGOMERY, JR.,
   JUDGE